LTL ATTORNEYS LLP
Joe Tuffaha (State Bar No.  253723)
  joe.tuffaha@ltlattorneys.com
Prashanth Chennakesavan (State Bar No.  284022)
  prashanth.chennakesavan@ltlattorneys.com
300 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone:  213-612-8900
Facsimile:  213-612-3773

Attorneys for Defendants
Robert Goldstein and DRG Strategic, LLC
d/b/a Meridian Global

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PLISKIN, AS TRUSTEE OF THE ICPW NEVADA TRUST<br><br>             Plaintiff,<br><br>     v.<br><br>ROBERT GOLDSTEIN and DRG STRATEGIC, LLC d/b/a MERIDIAN GLOBAL,<br><br>             Defendants. | Case No:  2:18-cv-09491 FMO (ASx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>*[Declaration of Robert Goldstein and [Proposed] Order filed concurrently herewith]*<br><br>Hearing:<br>Date: February 14, 2019<br>Time: 10:00 a.m.<br>Crtrm: 6D<br><br>Judge: Hon. Fernando M. Olguin |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF, HIS ATTORNEYS OF RECORD, AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE that on February 14, 2019, at 10:00 a.m., in Courtroom 6D of the United States District Court for the Central District of California, located at 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, Defendants Robert Goldstein ("Goldstein") and DRG Strategic, LLC, d/b/a Meridian Global (""DRG") (collectively "Defendants") will, and hereby do, move the Court to dismiss the Complaint (ECF No. 1) filed by Plaintiff Matthew Pliskin, as Trustee of the ICPW Nevada Trust ("Plaintiff"), pursuant to Rules 12(b)(2) of the Federal Rules of Civil Procedure. This Motion is made on the grounds that Plaintiff fails to establish personal jurisdiction over Defendants.  This Motion is supported by the following Memorandum of Points and Authorities, the [Proposed] Order filed concurrently herewith, the Affidavit of Robert Goldstein, the leadings and papers on file herein, and such other matters that may be presented to the Court at hearing.

///

///

///

///

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 7, 2019.

Dated: January 16, 2019

LTL ATTORNEYS, LLP

*/s/ Joe H. Tuffaha*

Joe H. Tuffaha
Prashanth Chennakesavan
300 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone:  213-612-8900
Facsimile:  213-612-3773

Bernie E. Hauder
*(pro hac vice admission pending)*

*Attorneys for Defendants*
*Robert Goldstein and DRG*
*Strategic, LLC*
*d/b/a Meridian Global*

MOTION TO DISMISS
CASE NO. 2:18-CV-09491-CBM (ASx)

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND .................................................................3

III.  AUTHORITY AND ARGUMENT .........................................................6

IV.  CONCLUSION ....................................................................................14

# **TABLE OF AUTHORITIES**

**CASES**

*1–800 Contacts, Inc. v. Steinberg,*
107 Cal.App.4th 568, 132 Cal.Rptr.2d 789 (2003) ...................................................8

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
223 F.3d 1082 (9th Cir. 2000)...................................................................................5

*Brand v. Menlove Dodge,*
796 F.2d 1070 (9th Cir. 1986) ................................................................................12

*Bristol-Meyers Squibb Co. v. Sup. Ct. of Cal.,*
137 S. Ct. 1773 (2017) ..............................................................................................6

*Burger King v. Rudzewicz,*
471 U.S.462 (1985) (citations omitted.) ...................................................................8

*CE Distribution, LLC v. New Sensor Corp.,*
28 380 F.3d 1107 (9th Cir. 2004) ...........................................................................11

*Coto Settlement v. Eisenberg,*
593 F.3d 1031 (9th Cir.2010) ...................................................................................8

*Daimler AG v. Bauman,*
134 S. Ct. 746, 761-62 & n.20 (2014) .......................................................................6

*Dole Food Co., Inc. v. Watts,*
303 F.3d 1104 (9th Cir.2002) ...................................................................................8

*Everett Fin., Inc. v. Primary Residential Mortg., Inc.,*
7378937 (N.D. Tex. Dec. 20, 2016) .........................................................................8

*Fairchild v. Barot,*
946 F. Supp. 2d 573 (N.D. Tex. 2013) ......................................................................8

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770 (1984) ...................................................................................................7

*Shaffer v. Heitner*,
433 U.S. 186 (1977) …………………………………………………....7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......................................................8

*Menken*,
503 F.3d at 1058.............................................................................11

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017)……………………………...………….6, 7

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)……………………………………………....………..6

*Ochoa v. J.B. Martin & Sons Farms, Inc.*,
287 F.3d 1182 (9th Cir 2002) .......................................................12

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316, 1322 (9th Cir. 1998) ............................................9

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006).......................................................8

*Residents of Bayview Hunters Point v. Lennar Housing Dev. Inc.*,
2007 WL 4126340, (N.D. Cal. Nov. 20, 2007) ............................12

*Roth v. Garcia Marquez*,
942 F.2d 617 (9th Cir. 1991) ........................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)........................................................8, 9

*Terracom v. Valley Nat. Bank*,
49 F.3d 555 (9th Cir. 1995)...........................................................12

*Walden v. Fiore*,
571 U.S. 277 (2014).......................................................8, 9, 10

ii

*Ziegler v. Indian River Cty.*,
64 F.3d 470 (9th Cir. 1995) ........................................................................13

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff asserts that in 2014, Ironclad Performance Wear Corporation, Inc. ("Ironclad") hired three individuals as officers of Ironclad, and as officers, the three individuals owed fiduciary duties to Ironclad.   Plaintiff further alleges that Goldstein knew the three individuals and had done business with them at their prior companies.   Plaintiff alleges that in 2015, these three Ironclad executives made certain representations to Ironclad's Board of Directors concerning Ironclad's projected sales and revenue growth and inventory values.   Plaintiff also alleges these Ironclad executives made certain statements in SEC filings that later had to be amended.   Plaintiff alleges that in late 2015, when the executives realized Ironclad was not going to meet the revenue projections, the three Ironclad executives began devising schemes to inflate Ironclad's sales.   According to Plaintiff, one of these schemes was for Ironclad to sell to DRG a certain quantity of gloves, which DRG was to relabel and then sell back to Ironclad at a higher price. This type of transaction occurred three times which Plaintiff claims occurred at the end of each of Ironclad's fiscal reporting periods, and such transactions somehow allowed the Ironclad executives to boost sales revenues in one period and inflate inventory value in the next period.   Plaintiff attempts to establish specific jurisdiction over Goldstein and DRG based upon the fact the gloves in question were relabeled by a company in California.

1

All negotiations and all agreements between DRG and the Ironclad employees occurred in the DFW area.  All performance by DRG occurred and all payments were made in the DFW area.  Neither Goldstein nor DRG have any substantial or continuous and systematic contacts with California.   Neither Ironclad nor AMS ever raised any issues or made any claims with respect to relabeling of the gloves and upon information and belief, after DRG sold the relabeled gloves to Ironclad, Ironclad was successful in selling the relabeled gloves.

Putting aside the lack of merit in Plaintiff's Complaint, Plaintiff attempts to establish specific jurisdiction over Defendants in California asserting the relabeling of the gloves occurred in California.   However, Plaintiff's claims against Defendants do <u>not</u> arise out of or relate to the relabeling of the gloves. There is no allegation or claim that the gloves were not relabeled, were improperly relabeled, that the relabeling was done in such a manner as to decrease or increase the projected or stated value of the gloves on Ironclad's financials, or that the relabeling was done in such a manner as to increase or decrease Ironclad's inventory values. Rather, Plaintiff asserts Defendants were somehow aware of an alleged scheme by certain officers of Ironclad to mislead Ironclad's Board of Directors about Ironclad's revenue growth and inventory values, and Plaintiff's claims are that Defendants purchased and resold these gloves to Ironclad with knowledge of and in an attempt to assist these certain officers in this alleged scheme.

MOTION TO DISMISS
CASE NO. 2:18-CV-09491-CBM (ASx)

All dealings between Defendants and Ironclad occurred in Texas, not in California.  At the time of the incidents that form the basis of Plaintiff's complaint, both Ironclad and Defendants were located in and their agreement was entered into in Texas.  Plaintiff's claims do not arise out of or relate to the relabeling of the gloves, which is the only incidental and non-related event that occurred in California.

## II.   FACTUAL BACKGROUND

Prior to the incidents that form the basis of Plaintiff's Complaint, DRG had several business dealings with Ironclad and had dealt with several of its employees both while these employees were at Ironclad and while they were at their former employers.  *See* Declaration of Robert Goldstein[1] ("Goldstein Decl."), ¶ 4.  The Affidavit of Robert Goldstein is incorporated as if set forth herein fully at length.  All such business dealings occurred in the Dallas-Fort Worth metroplex ("DFW") area as Defendants and Ironclad and such employees resided in the DFW area.  *Id.*

In 2015, Ironclad contacted Goldstein in the DFW area in connection with certain gloves that Ironclad had in Canada. Goldstein Decl., ¶ 5. Ironclad told Goldstein the gloves could not be sold as labeled, that they needed to be relabeled due to certain restrictions that applied to the gloves and branding of same, and that Ironclad could not have the gloves relabeled.  *Id.*  Ironclad asked DRG to purchase

---

[1] The Declaration of Robert Goldstein is incorporated as if set forth herein fully at length.

the gloves, have them relabeled and attempt to sell any or all into offshore markets (so as not to interfere with Ironclad's onshore markets). *Id.* DRG was responsible for the costs to have the gloves relabeled. *Id.,* ¶ 9. DRG and Ironclad entered into an agreement whereby DRG would purchase the gloves, have them relabeled and then attempt to sell them in offshore markets. *Id.,* ¶ 5. If DRG could get any or all of the gloves resold, it kept the difference in the cost of the gloves and the cost of relabeling and the price at which it sold the gloves. *Id.* If DRG could not get any or all relabeled gloves sold, Ironclad would repurchase the relabeled gloves and sell same. *Id.* Ironclad and DRG entered into an agreement in DFW. *Id.*

DRG contacted several of the overseas entities with which it had done business in the past about having the gloves relabeled, but none expressed a real interest and raised concerns about doing so. *Id.,* ¶ 6. DRG informed Ironclad of same and Ironclad gave DRG the name of person at a third-party relabeling company for DRG to contact. *Id*., ¶ 7. DRG contacted the person, learned the person worked for AMS and made arrangements to have the gloves shipped to AMS for relabeling of same. *Id.*

After arranging to have and having the gloves relabeled, DRG tried but was unsuccessful in selling the gloves to offshore markets. *Id.,* ¶ 8. Pursuant to the parties' agreement Ironclad purchased the relabeled gloves from DRG. *Id.* Ironclad contacted DRG on two other occasions in connection with this same agreement. *Id.*

Each time the gloves were relabeled and DRG was unable to sell any of the relabeled gloves into offshore markets and sold them to Ironclad.  Upon information and belief, after DRG sold the relabeled gloves to Ironclad, Ironclad was successful in reselling the relabeled gloves.  *Id.*

All negotiations and all agreements between DRG and the Ironclad employees occurred in the DFW area.  *Id.,* ¶ 10.  All performance by DRG occurred and all payments were made in the DFW area.  *Id.*  Neither Goldstein nor DRG have any substantial or continuous and systematic contacts with California.[2]  *Id.*  Neither Goldstein nor DRG have ever maintained a residence or had and office or any employees in California.  *Id.,* ¶ 12.

All of the gloves were relabeled as requested and AMS was fully paid for the relabeling.  *Id.,* ¶ 9.  Neither Ironclad nor AMS ever raised any issues or made any claims with respect to relabeling of the gloves.  *Id.*  Upon information and belief, after DRG sold the relabeled gloves to Ironclad, Ironclad was successful in selling the relabeled gloves.  *Id.*

At no time relevant hereto was either Defendant aware of any representations made by any executives of Ironclad to Ironclad's Board of Directors or to anyone else about Ironclad's projected sales, revenue growth, inventory values,  any other financial information about Ironclad, or of any scheme or plan by any Ironclad

---

[2] Therefore, neither is subject to general jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

MOTION TO DISMISS
CASE NO. 2:18-CV-09491-CBM (ASx)

executive to fraudulently inflate Ironclad's sales numbers, revenue growth, inventory numbers or any other Ironclad financial information. *Id.,* ¶¶ 11 and 12. At no time relevant hereto was either Defendant aware of Ironclad's fiscal calendar, of how or when Ironclad was booking revenues, sales or inventory values, or of any representations made by anyone, including the three Ironclad executives in question, to Ironclad's Board of Directors or anyone else. *Id.* At no time relevant hereto did either Defendant have any discussions with anyone, including the three Ironclad executives in question, about Ironclad's fiscal calendar, how or when Ironclad booked revenues, sales or inventory values, or of any representations any one made to Ironclad's Board of Directors. *Id.*

## III.   AUTHORITY AND ARGUMENT

"Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Minimum contacts exist "if the defendant has 'continuous and systematic general business contacts' with a forum state (general jurisdiction),[3]

---

[3] Defendants understand Plaintiff is not attempting to establish general personal jurisdiction—and any such attempt would be facially futile. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 & n.20 (2014) (limiting general jurisdiction over corporations to an entity's state of incorporation or principal place of business, except in exceptional circumstances not present here); *Bristol-Meyers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]").

MOTION TO DISMISS
CASE NO. 2:18-CV-09491-CBM (ASx)

or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Morrill*, 873 F.3d at 1142 (citation omitted).

The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendants, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (*quoting Shaffer v. Heitner*, 433 U.S. 186 (1977)). For a State to exercise specific jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The relationship must arise out of contacts that the <u>defendant himself</u> creates with the forum State and the court looks to the defendant's contacts with the state and not with persons who reside there. *Id.* The defendant's suit-related conduct must create a substantial connection with the forum State. *Id.* at 289.

The Ninth Circuit has adopted a three-prong test courts utilize in determining issues of specific jurisdiction:

(1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2)    The claim must be one which arises out of or relates to the defendant's forum-related activities; and
(3)    The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff establishes the first two prongs, the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.

Under the first prong of the three-part specific jurisdiction test, the plaintiff must establish the defendant either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California. The "purposeful availment" requirement ensures that a defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"[4] *Burger King v. Rudzewicz*, 471 U.S.462, 475 (1985) (citations omitted.) Courts use the "purposeful availment" analysis in suits sounding in contract and the "purposeful direction" analysis, in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802; *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002); *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1227–28 (9th Cir. 2011).

---

[4] Plaintiff's claims in the instant lawsuit sound in tort. *See 1–800 Contacts, Inc. v. Steinberg,* 107 Cal.App.4th 568, 132 Cal.Rptr.2d 789 (2003); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir.2010); *Fairchild v. Barot,* 946 F. Supp. 2d 573, 581 (N.D. Tex. 2013);. *Everett Fin., Inc. v. Primary Residential Mortg., Inc.,* No. 3:14-cv-1028-D, 2016 WL 7378937, at *12 (N.D. Tex. Dec. 20, 2016).

The "purposeful direction" is satisfied when a defendant (1) commits an intentional act, (2) expressly aimed at the forum, (3) which causes foreseeable harm in the forum." *See id.* This standard is sometimes referred to as the "effects test." *See id.* It does not mean that every foreign act with foreseeable effects in the forum state gives rise to specific jurisdiction. *Walden*, 571 U.S. at 289. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

The second factor – the claim must be one which arises out of or relates to the defendant's forum-related activities – is established only if the plaintiff 'would not have been injured but for the defendant's conduct directed at the forum. *Walden v. Fiore*, 571 U.S. at 289. The plaintiff must establish suit-related conduct that creates a substantial connection with the forum State. *Id.* The random, fortuitous, and attenuated State-specific contact – relabeling of the gloves in question – is plainly insufficient to establish personal jurisdiction.

Plaintiff claims against Defendant are for "aiding and abetting breach of fiduciary duty" and "unjust enrichment." These claims arise out of alleged conduct and communications between Defendants and certain Ironclad executives that allegedly occurred **in Texas**.   Neither Defendant made a single trip to California

and neither Defendant communicated with Ironclad or its executives while either Defendant or any of the Ironclad employees were in California.

The only allegations in Plaintiff's Complaint purportedly connecting Defendants to California is his specious and false assertion that the fraudulent transactions all occurred at Ironclad's "warehouse and logistic operations" in Los Angeles County. The <u>only</u> thing that occurred in such warehouse in Los Angeles County was the <u>relabeling</u> of the gloves in question. Plaintiff does not claim that the Ironclad executives breached their fiduciary duty by having the gloves relabeled or that Plaintiff's alleged injuries were caused by the relabeling of the gloves. There is no claim the gloves in question were not relabeled, were incorrectly relabeled or that the relabeling of the gloves adversely affected the value of the gloves or was a major part (or any part for that matter) of the alleged breach of fiduciary duty by the Ironclad executives, the alleged aiding and abetting by Defendants in such breach, or in Defendants' alleged unjust enrichment. Plaintiff's claims do not relate to or arise out of the relabeling of the gloves, the value of the relabeled gloves or to the ultimate sale of the relabeled gloves. Rather, they relate to and arise out of alleged conduct of the Ironclad executives in the manner and means in which these executives represented, booked and reported the sale of such gloves and the alleged conduct of Defendants in allegedly knowingly assisting these executives is doing so. All such alleged conduct occurred in Texas.

Consequently, Plaintiff has failed to provide this Court with any legitimate basis to exercise personal jurisdiction over Defendants, and the Complaint must therefore be dismissed.

Only if a plaintiff can satisfy both of the first two prongs will a court consider whether exercise of jurisdiction is "reasonable." *See Menken*, 503 F.3d at 1058. Given Plaintiffs' clear failure to do so, this Court need not engage in a "reasonableness" analysis. But even if it did, it would not help Plaintiff. The reasonableness inquiry is based on a consideration of:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum;
> (3) the extent of conflict with the sovereignty of the defendants' state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
> (7) the existence of an alternative forum.

*CE Distribution, LLC v. New Sensor Corp.*, 28 380 F.3d 1107, 1112 (9th Cir. 2004).

These factors cut sharply in Defendants' favor. First, neither Defendant purposefully interjected into California's affairs. The only contact with California was the gloves were relabeled in California. Neither Defendant maintains a residence or office in California and both would be unduly burdened in defending this lawsuit in California. Goldstein Decl., ¶ 13. California's interest in adjudicating his dispute weight in Defendants' favor given the additional fact that, according to

MOTION TO DISMISS
CASE NO. 2:18-CV-09491-CBM (ASx)

the Civil Cover Sheet, Plaintiff Matthew Pliskin is a resident of Hillsborough, Florida and Defendants are both residents of Texas.  The Court can consider this filing when ruling on a motion to dismiss.  *See, e.g., Residents of Bayview Hunters Point v. Lennar Housing Dev. Inc.*, 2007 WL 4126340, at *1 (N.D. Cal. Nov. 20, 2007).  Thus, the factor that typically weighs in a plaintiff's favor is of no moment here.  *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1193 (9th Cir 2002) (explaining that the forum state "has a strong interest in protecting its residents from injury and in furnishing a forum where their injuries may be remedied"); *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991) (explaining that the "convenience and effectiveness of relief for plaintiff" favors litigating in the plaintiff's home state, since "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference").  Once those typically pro-plaintiff factors are stripped away, resolution of the third prong becomes clear: any faint interest a Florida resident has in litigating his case in the Central District of California is overwhelmed by a Texas resident's interest in not doing so.  *See e.g., Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (lack of out-of-state defendant's "purposeful interjection [in forum state] weighs heavily" in favor of defendants); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986) (dismissing for lack of personal jurisdiction and explaining that the burden on a small, out-of-state company to defend itself in California is substantial);

*Ziegler v. Indian River Cty.*, 64 F.3d 470, 476 (9th Cir. 1995) (explaining that plaintiff bears the burden of establishing that his claim could not be litigated in an alternative forum and, where he has not done so, the "factor goes to defendants"). Therefore, even if Plaintiff were to reach the third prong, his Complaint would still need to be dismissed.

Furthermore, the three Ironclad executives in question and all of Defendants and their employees reside in Texas.   The most efficient resolution of the controversy would be in Texas, not in California, and Texas is an alternative forum for this lawsuit.   The "reasonableness" factors weigh in favor of dismissal of this lawsuit.

Contrary to Plaintiff's assertion, none of the alleged "fraudulent transactions" occurred at Ironclad's warehouse and logistics operations in Los Angeles County. All transactions between Defendants and Ironclad occurred in the DFW area.  Both Goldstein and the executives of Ironclad were in the DFW area when they entered into the agreement with regard to the gloves in question and with regard to all agreements made the basis of Plaintiff's claims. All payments were made to Goldstein in DFW.   Neither Goldstein nor DRG or any of DRG's employees ever were in Ironclad's warehouse and logistics operations in Los Angeles County

In sum, Plaintiff's Complaint fails to sufficiently allege personal jurisdiction over Defendants. Consequently, well-established law mandates dismissal.

## IV.    CONCLUSION

Constitutional due process demands that Plaintiff adequately plead personal jurisdiction to each defendant. For the described herein, this Court should dismiss Plaintiff's complaint as Plaintiff has not established and the Court lacks personal jurisdiction over Defendants.


Dated: January 16, 2019                                          LTL ATTORNEYS, LLP

                                                                 */s/ Joe H. Tuffaha*
                                                                 _____

                                                                 Joe H. Tuffaha
                                                                 Prashanth Chennakesavan
                                                                 300 S. Grand Avenue, 14th
                                                                 Floor
                                                                 Los Angeles, California 90071
                                                                 Telephone:  213-612-8900
                                                                 Facsimile:  213-612-3773

                                                                 Bernie E. Hauder
                                                                 *(pro hac vice admission
                                                                 pending)*

                                                                 *Attorneys for Defendants
                                                                 Robert Goldstein and DRG
                                                                 Strategic, LLC
                                                                 d/b/a Meridian Global*