SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
AHMED ("ANDY") R. JINNAH (Bar No. 297907)
andy.jinnah@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California. 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9224

ANDREW T. SOLOMON (*admitted pro hac vice*)
asolomon@solomoncramer.com
SOLOMON & CRAMER LLP
1441 Broadway, Suite 6026
New York, New York 10018
Telephone: (212) 884-9102
Facsimile: (516) 368-3896

Attorneys for Plaintiff Matthew Pliskin,
as Trustee of the ICPW Nevada Trust

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)

| | |
|---|---|
| MATTHEW PLISKIN, AS TRUSTEE OF THE ICPW NEVADA TRUST<br><br>Plaintiff,<br><br>-against-<br><br>ROBERT GOLDSTEIN and DRG STRATEGIC, LLC d/b/a/ MERIDIAN GLOBAL,<br><br>Defendants. | Case. No.: 2:18-cv-09491-FMO(ASx)<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>*[Declaration of Matthew A. Pliskin filed concurrently herewith]*<br><br>Hearing: February 14, 2019 at 10 a.m. |

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ........................................................................................ 5

ARGUMENT ................................................................................................................ 9

    I.    Defendants Purposefully Availed Themselves of the Privilege of Conducting Business in California ................................................................................ 10

    II.   There Is A Direct Nexus Between The Claims and Defendants' California-Related Activities ..................................................................................... 13

    III.  Defendants Cannot Set Forth A "Compelling Case" That The Exercise Of Jurisdiction Would Be Unreasonable .......................................................... 14

CONCLUSION .......................................................................................................... 17

2

OPPOSITION TO MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adv. Skin & Hair, Inc. v. Bancroft*,
    858 F. Supp. 2d 1084 (C.D. Cal. 2012)......................................................................13

*Ballad v. Savage*,
    65 F.3d 1495 (9th Cir. 1995)......................................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................10, 15

*Caruth v. Int'l Psychoanalytical Ass'n*,
    59 F.3d 126 (9th Cir. 1995)........................................................................................16

*Coach, Inc. v. TB Nails Product, Inc.*,
    2018 U.S. Dist. LEXIS 54186 (N.D. Tex. Mar. 30, 2018) ................................................12

*CollegeSource v. AcademyOne*,
    653 F.3d 1066 (9th Cir. 2011)..........................................................................9, 10, 14, 16

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002)....................................................................................12

*Freeney v. Bank of Am. Corp.*,
    2015 U.S. Dist. LEXIS 92848 (C.D. Cal. July 15, 2015) ...............................................9

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003)....................................................................................13

*Helicopteros Nacionales de Columbia S.A. v. Hall*,
    466 U.S. 408 (1984).....................................................................................................9

*Hendricks v. New Video Channel Am., LLC*,
    2015 U.S. Dist. LEXIS 74677 (C.D. Cal. June 8, 2015)........................................10, 13

*Huntair, Inc. v. Gladstone*,
    774 F. Supp. 2d 1035 (N.D. Cal. 2011) .......................................................12, 13, 15

*In re. ICPW Liquidation Corporation, a California Corporation*,
    No. 1:17-bk-12408-MB (Bankr. C.D. Cal. filed Sept. 8, 2017) ......................................5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011).....................................................................................12

*Oakley, Inc. v. Jofa AB*,
    287 F. Supp. 2d 1111 (C.D. Cal. 2003)..........................................................................9

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)..............................................................................15, 16

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)..............................................................................10, 11

*Schwartzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)...........................................................................10, 11, 12

*SDS Korea Co. v. SDA USA, Inc.*,
    732 F. Supp. 2d 1062 (S.D. Cal. 2010) .........................................................................5

*Snowney v. Harrah's Entertainment, Inc.*,
    112 P.3d 28 (Cal. 2005) .............................................................................................11

*Valentine v. NebuAd, Inc.*,
    2009 U.S. Dist. LEXIS 93454 (N.D. Cal. October 6, 2009).............................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014)...................................................................................................12

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
    433 F.3d 1199 (9th Cir. 2006)....................................................................................11

**Statutes**

California Code of Civil Procedure
    § 410.10........................................................................................................................9

Plaintiff Matthew Pliskin, in his capacity as Trustee of the ICPW Nevada Trust, submits this Opposition to Defendants' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, ECF No. 15.  Because Defendants' conduct established sufficient minimum contacts with this forum, the Court may properly exercise specific personal jurisdiction over them in this dispute.  Defendants' Motion should be denied.

**FACTUAL BACKGROUND**

This action arises out of the collapse of the public company formerly known as Ironclad Performance Wear Corporation, a Nevada corporation, and its wholly owned subsidiary, Ironclad Performance Wear Corporation, a California corporation (collectively, "Ironclad").  Ironclad was an apparel company founded in 1998 by Ed Jaeger, who pioneered use-specific glove technology for plumbers, masonry workers, demolition workers, electricians, and construction workers. Ironclad stock had been publicly traded since 2006.  Compl. ¶ 7.[1]

Defendant Robert Goldstein, acting through his company, Defendant DRG Strategic, LLC d/b/a Meridian Global (collectively, "Defendants"), aided and abetted three senior Ironclad officers in breaching their fiduciary duties to the company by engaging in a scheme to manipulate the company's financial results. After the Ironclad officers' scheme was discovered in mid-2017, Ironclad was obligated to disavow its publicly reported financial statements, which triggered an automatic default under its loan covenants.   The Ironclad officers' scheme was a substantial factor in ultimately forcing Ironclad into bankruptcy. *See In re. ICPW Liquidation Corporation, a California Corporation*, No. 1:17-bk-12408-MB (Bankr. C.D. Cal. filed Sept. 8, 2017). Ironclad's collapse resulted in shareholder damage in excess of $10 million.  Compl. ¶ 1.

Following the collapse of Ironclad, the ICPW Nevada Trust (the "Trust") was created under the laws of California pursuant to an approved liquidation plan in the bankruptcy proceeding. The Trust exists for the benefit of the former shareholders of Ironclad and Trustee Matthew Pliskin is

---

[1] For the purpose of this Memorandum, non-jurisdictional facts and uncontested jurisdictional facts are drawn from the allegations in the Complaint, ECF No. 1.  Contested jurisdictional facts are drawn from the Declaration of Matthew Pliskin filed herewith, cited as "Pliskin Decl. ¶ __," and its associated Exhibits, cited as "Pliskin Decl. Ex. __."  *See SDS Korea Co. v. SDA USA, Inc.*, 732 F. Supp. 2d 1062, 1069 (S.D. Cal. 2010).

directed and authorized to investigate and bring claims on behalf of the Trust. Compl. ¶ 3. On or about the time Ironclad as a company ceased to exist and the Trust was created, at least 37% of the total shares of Ironclad were held by residents of California. Pliskin Decl. ¶ 3.[2]

Defendants played a key role in the senior Ironclad officers' scheme to manipulate Ironclad's financial results by acting as the counterparty in several phony round-trip transactions. These transactions served no purpose other than to allow the Ironclad officers to falsely boost Ironclad's reported revenues at critical end-of-fiscal-period moments. Compl. ¶ 2.

On at least three separate occasions, the Ironclad officers "sold" goods to Defendants in the final days of a fiscal reporting period. Then, in the succeeding months, Ironclad "purchased" the same goods back from Defendants at a higher price. The purpose of these round-trip transactions was to enable the Ironclad officers to improperly recognize the revenue from the sale in one period and then to improperly record the buyback of the same goods (slightly modified with a new label or packaging) as new inventory, without recording a return and without reversing the prior sale or taking a corresponding loss. Defendants received a share of the higher buyback price as their payment for facilitating the Ironclad officers' scheme to manipulate the company's financial results. Compl. ¶ 13.

Defendants' fraudulent transactions all involved Ironclad's California-based warehouse and logistics operations, provided by Advantage Media Services, Inc. ("AMS") located at 28220 Industry Drive, Valencia, California. Compl. ¶ 14.

As alleged in the Complaint, Defendants' served as counterparties in several sham transactions designed to assist the Ironclad officers in their financial manipulation schemes. The first sham transaction took place at the end of 2015. On December 31, 2015, Ironclad issued an invoice to Defendants (using the name "Meridian Global") for their purchase of $413,640 of "Kong Rigger Grip Cut 5 Quanta" gloves. The invoice listed the "Bill To" address as "Meridian Global, 3515 Brown Street, Suite 122, Dallas, Texas," but the "Ship To" address as "Meridian Global, 28220

---

[2] Because some of the total shares of the company were held in "street name," the true percentage of the total shares of Ironclad held by California residents may be higher. Pliskin Decl. ¶ 3.

6

OPPOSITION TO MOTION TO DISMISS

1  Industry Drive, Valencia, California"—i.e., the address of Ironclad's California warehouse facility
2  operated by AMS.  Pliskin Decl. Ex. A.

3        Contrary to the unsupported assertions of Defendant Goldstein in his Declaration, the gloves
4  Defendants bought from Ironclad on December 31, 2015 were not located in Canada, *see* Goldstein
5  Decl. ¶ 5, and Defendants did not arrange to have the gloves shipped from Canada to AMS for the
6  purpose of relabeling them, *see id.* ¶ 8.  As the AMS tracking report corresponding to the December
7  31, 2015 order indicates, at the time the senior Ironclad officers sold the gloves to Defendants, the
8  gloves were sitting in Ironclad stock in the warehouse facility in Valencia, California, and from
9  which stock they were to be pulled for shipping to Defendants.  Pliskin Decl. Ex. B.  The shipping
10 method was listed as "will call."  *Id.*  The gloves would not leave the warehouse in California until
11 after Defendants sold the gloves back to Ironclad in the first half of 2016.  Compl. ¶ 15.

12       Defendant Goldstein asserts in his Declaration, without support, that after AMS relabeled the
13 gloves, Defendants "tried but w[ere] unsuccessful in selling the gloves to offshore markets" and that
14 for this reason, "pursuant to the parties' agreement," Ironclad bought the relabeled gloves back from
15 Defendants.  *See* Goldstein Decl. ¶ 8.  However, Ironclad sent a purchase order to Defendants to buy
16 back the relabeled gloves on February 4, 2016, well in advance of the completion of the relabeling
17 job.  Pliskin Decl. Ex. C.  As Ironclad's Senior Vice President–Supply Chain explained to AMS by
18 email on February 26, 2016:

19     We (Ironclad) are going to buy these completed units back from Meridian as KRC5's.
20     We are short on KRC5's and instead of making more, he is going to sell them back to
    us after you have completed the Quanta label removal.  Can you invoice DRG
21     Strategic (Meridian) for the conversion work you have completed, then receive these
    into Ironclad stock as KRC5's? we have issues DRG Strategic a PO for these.
22

23 Pliskin Decl. Ex. D.

24       AMS billed Defendants on a rolling basis as the relabeling job was completed: (1) by invoice
25 dated March 3, 2016, AMS billed Defendants $11,808, Pliskin Dec. Ex. E at 6; (2) by invoice dated
26 March 16, 2016, AMS billed Defendants $8,568., *id.* at 4; and (3) by invoice dated March 29, 2016,
27 AMS billed Defendants $7,200, *id.* at 2.  Defendants paid AMS for the relabeling work, but because
28 there was never any plan for Defendants to sell the relabeled gloves to any "offshore markets," as

AMS billed Defendants for the relabeling work, Defendants sent corresponding invoices to Ironclad for the buyback of the relabeled gloves, which AMS then immediately moved back into Ironclad stock.  Compl. ¶ 17.

In June of 2017, an internal company investigation began to question the December 2015 transaction.  On June 7, 2017, Defendant Goldstein sent the AMS invoices showing the work AMS performed in the California warehouse for Defendants to the Ironclad officers.  Pliskin Decl. Ex. E at 1.  The Ironclad officers then offered the AMS invoices to investigators and to the Ironclad Audit Committee as evidence that the December 2015 transaction was legitimate.  On June 8, 2018, Defendants furnished a letter to the Ironclad officers on "Meridian Global" letterhead and addressed "[t]o whom it may concern":

> We acknowledge that on December 31 2015 we had taken constructive delivery and receipt on the product detailed on Ironclad invoice number 206066 in the amount of $413640.00 and dated 12/31/15.
>
> We had taken constructive delivery as of December 31 2015 to allow us to proceed with making modifications to the product and associated packaging listed on the above mentioned invoice so that we could be able to sell the product to international based distributors.
>
> We acknowledge that all title and risk related to this shipment transferred to us at the AMS facility on December 31 2015.

Pliskin Decl. Ex. F.  The "AMS facility" referred to in the letter was the warehouse located in Valencia, California.  Defendant Goldstein signed the letter.  The Ironclad officers then offered the letter to investigators and to the Ironclad Audit Committee as evidence that the December 2015 transaction was legitimate.

Defendants contributed to the Ironclad officers' scheme to manipulate the company's financial results on at least two additional occasions.  On June 30, 2016, Defendants "bought" $219,597.84 worth of gloves from Ironclad.  Compl. ¶ 20.  On December 30, 2016, Defendants "bought" $332,445.48 worth of gloves from Ironclad.  Compl. ¶ 21.  Just as with the earlier "sale" to Defendants on December 31, 2015, these orders were marked for shipment to Defendants by AMS

as "will call," but the gloves never left the California warehouse before Defendants "sold" the gloves back to Ironclad for a premium over the ensuing months. Compl. ¶ 22.

### ARGUMENT

The Court has specific personal jurisdiction over Defendants and should therefore deny Defendants' Motion to Dismiss.

As a preliminary matter, Defendants have moved to dismiss for lack of personal jurisdiction as their initial response. Accordingly, the Trust "need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *CollegeSource v. AcademyOne*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). "In considering [the Trust's] prima facie showing, the Court must accept [the Trust's] uncontroverted allegations as true and resolve any factual conflicts in the affidavits in [the Trust's] favor." *Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1114 (C.D. Cal. 2003).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *CollegeSource*, 653 F.3d at 1073. In California, personal jurisdiction extends to the limits of due process, Cal Civ. Proc. Code § 410.10, so "the jurisdictional analyses under state law and federal due process are the same," *CollegeSource*, 653 F.3d at 1073 (quoting *Schwartzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004)). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A non-resident defendant may be subject to either general jurisdiction or specific jurisdiction. *Freeney v. Bank of Am. Corp.*, 2015 U.S. Dist. LEXIS 92848, at *62 (C.D. Cal. July 15, 2015) (citing *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)). In this case, the Trust does not assert that Defendants are subject to general jurisdiction in this forum. Rather, Defendants are subject to specific jurisdiction because they have sufficient "minimum contacts" with California that relate to the causes of action. *See Oakley*, 287 F. Supp. 2d at 1114.

"So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).

The Ninth Circuit applies a three-prong test to analyze whether a defendant is subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*CollegeSource*, 653 F.3d at 1076 (quoting *Schwartzenegger*, 374 F.3d at 802). The Trust has the burden of showing that specific jurisdiction is appropriate under the first two prongs. *Id.* If the Trust makes that showing, "the burden then shifts to [Defendants] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

### I.   Defendants Purposefully Availed Themselves of the Privilege of Conducting Business in California

The first prong of the specific jurisdiction test is satisfied where "the defendant has 'purposefully availed itself of the privilege of doing business in the forum' by 'perform[ing] some type of affirmative conduct [that] allows or promotes the transaction of business within the forum state.'" *Hendricks v. New Video Channel Am., LLC*, 2015 U.S. Dist. LEXIS 74677, at *21 (C.D. Cal. June 8, 2015) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).[3]   Simply put, the standard of "purposeful availment" is met "whenever the defendant

---

[3] The first prong of the specific jurisdiction test may be satisfied by a finding of either of two standards: "purposeful availment" or "purposeful direction." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  The Ninth Circuit has observed that "purposeful availment" is used "most often" in suits sounding in contract, while "purposeful direction" is used "most often" in suits sounding in tort, *see, e.g.*, *Schwartzenegger*, 374 F.3d at 802, but there is no "absolute rule" that only

purposefully and voluntarily directs its activities toward the forum state in an effort to obtain a benefit from that state." *Snowney v. Harrah's Entertainment, Inc.*, 112 P.3d 28, 36 (Cal. 2005) (explaining that "purposeful availment" does not require the involvement of the forum state's laws or public facilities). A showing of "purposeful availment" "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802.

As set forth in the Complaint, which the Court must accept as true, and the evidence submitted by the Trust, which the Court must view in the Trust's favor, on at least three occasions Defendants acted as the straw buyer of Ironclad goods in California for the purpose of enabling the Ironclad officers to improperly recognize the revenue from the "sale," obtaining an economic benefit for themselves in the process. Furthermore, when the company's Audit Committee and investigators questioned the Ironclad officers about the transactions, Defendants furnished documents regarding these California transactions, including invoices from the California warehouse and a statement that Defendants took "constructive delivery" in California, in an attempt to persuade them that the transactions were bona fide.

Courts presented with similar facts of economic activity in the forum state have concluded that such activity is sufficient to show "purposeful availment" of the privilege of doing business in the forum state. *See Ballad v. Savage*, 65 F.3d 1495, 1499 (9th Cir. 1995) (defendant Austrian bank "purposefully availed" itself of the privilege of doing business in California and was subject to specific jurisdiction in California for its role in facilitating Ponzi

---

one standard may apply according to a broad categorization of the cause of action. *Valentine v. NebuAd, Inc.*, 2009 U.S. Dist. LEXIS 93454, at *11 (N.D. Cal. October 6, 2009) ("The key to whether 'purposeful availment' analysis applies. . . is not whether the claim sounds in contract, but whether the defendant received any 'benefit, privilege, or protection' from the forum state in connection with the conduct at issue."); *see Pebble Beach*, 453 F.3d at 1155 (in case sounding in tort, explaining that first prong may be satisfied by a showing of "either" "purposeful availment" or "purposeful direction"); *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof").

scheme); *Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1041-42 (N.D. Cal. 2011) (defendant "purposefully availed himself of the benefits of doing business in California" through his participation in a scheme to divert business from his employer to California competitor); *Coach, Inc. v. TB Nails Product, Inc.*, 2018 U.S. Dist. LEXIS 54186, at *13 (N.D. Tex. Mar. 30, 2018) (personal jurisdiction proper against corporation and principal on basis of business dealings with third-party warehouse in forum state).[4]

Finally, Defendants do not deny that they engaged in business dealings with Ironclad's California-based warehouse operations run by AMS. Instead, in an attempt to avoid the conclusion that they are therefore subject to personal jurisdiction in this forum, they argue that those business dealings were legitimate and not as alleged in the Complaint. *See* Motion to Dismiss at 10 ("The only allegations in Plaintiff's Complaint purportedly connecting Defendants to California is his specious and false assertion that the false transactions all occurred at Ironclad's 'warehouse and logistics operations' in Los Angeles County."); *id.* at 13 ("Contrary to Plaintiff's assertion, none of the alleged 'fraudulent transactions' occurred at Ironclad's warehouse and logistics operations in Los Angeles County."). However, on a motion to dismiss, Defendants are not free to rewrite the allegations in the Complaint going to liability to make them more to their liking. *See Coach*, 2018 U.S. Dist. LEXIS 54186, at *9 (denying motion to dismiss where "defendants do not deny shipping products to Nails Warehouse or doing business with Nails Warehouse" but rather "deny any products they shipped to Nails Warehouse were counterfeit or infringed upon Coach's protected marks").

For these reasons, Plaintiff has satisfied the first prong of the test for specific jurisdiction.

---

[4] The tort cases cited in a cursory fashion by Defendants are inapposite here, when none of those cases involve defendants whose wrongful conduct relate to their economic activity in the forum state. *See* Motion to Dismiss at 8-9 (*Walden v. Fiore*, 571 U.S. 277 (2014) (Bivens claims arising out of alleged illegal search and seizure occurring outside of the forum state); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (copyright infringement via a website); *Schwarzenegger*, 374 F.3d 797, 803 (9th Cir. 2004) (action for unauthorized use of image and infringement outside of forum state); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (fraudulent scheme to induce the lease of real property in foreign country)).

## II. There Is A Direct Nexus Between The Claims and Defendants' California-Related Activities

In evaluating the second prong of the specific jurisdiction analysis, the Court must determine whether "there is a direct nexus between the claims being asserted and the defendant's activities in the forum." *Hendricks*, 2015 U.S. Dist. LEXIS 74677, at *22 (citing *Adv. Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1090 (C.D. Cal. 2012)). "The Ninth Circuit applies a 'but for' test to this second prong." *Id.*

Such a direct nexus exists here. The Trust's claims, that Defendants aided and abetted the Ironclad officers' breach of fiduciary duty and that Defendants were unjustly enriched thereby, arise directly out of Defendants' activities involving the warehouse facility in California in support of the Ironclad officers' scheme to manipulate the company's financial results. The Trust's claims against Defendants would not have arisen "but for" Defendants' California-related activities, including their willingness to pose as the counterparty in a series of sham round-trip transactions involving the warehouse in California and then to present evidence of those same California transactions to mislead Ironclad's Audit Committee and internal investigators. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (concluding that "but for" defendant's California-related activities, plaintiff's claims would not have arisen); *Huntair*, 774 F. Supp. 2d. at 1042 (finding the second prong satisfied where "Plaintiff's claims are based on the allegations concerning Moser's involvement in the California-based Reliant scheme").

Defendants' argument with respect to the second prong follows from their argument regarding the first prong. In order to make the assertion that the claims do not arise out of their California-related activities, Defendants disregard the Trust's allegations of wrongdoing as actually set forth in the Complaint and present instead a set of facts limited to "the relabeling of the gloves." *See* Motion to Dismiss at 10. Because the Court must accept the Trust's uncontroverted allegations in the Complaint as true and resolve all conflicts between the parties' evidence of jurisdictional facts in the Trust's favor, Defendant's attempt to reframe the Complaint in more favorable terms should be rejected.

For these reasons, Plaintiff has satisfied the second prong of the test for specific jurisdiction.

### III. Defendants Cannot Set Forth A "Compelling Case" That The Exercise Of Jurisdiction Would Be Unreasonable

After a plaintiff has made a prima facie showing of the requisite minimum contacts with the forum under the first and second prongs of the specific jurisdiction test, "the burden shifts to [the defendant] to 'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *CollegeSource*, 653 F.3d at 1079 (quoting *Burger King*, 471 U.S. at 477-78)). Defendants have not and cannot make such a "compelling case" here.

Courts in the Ninth Circuit consider the following factors to determine whether the exercise of jurisdiction is reasonable:

(1) the extent of the defendants' purposeful injection into the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of the conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Id.*

Regarding the first factor, "the extent of the defendants' purposeful injection into the forum state's affairs," Defendants seek to minimize their contacts with the forum by claiming that "[t]he only contact with California was the gloves were relabeled in California." Motion to Dismiss at 11. This is simply not accurate. As explained above, on at least three occasions Defendants acted as the straw buyer of Ironclad goods in California for the purpose of enabling the Ironclad officers to carry out their financial manipulation scheme. When the company's Audit Committee and investigators began to question the sham transactions,

Defendants then furnished evidence of these California transactions, including invoices from the California warehouse and a statement that Defendants took "constructive delivery" in California, in an attempt to persuade them that the transactions were legitimate. This factor weighs in favor of the reasonableness of jurisdiction.

Regarding the second factor, "the burden on the defendant of defending in the forum," Defendants state in a perfunctory manner that neither maintain a residence of office in California and that they would be "unduly burdened" by litigating there. *See* Motion to Dismiss at 11. However, the mere fact that Defendants are not citizens of the forum state, without more, is not sufficient to make the burden of litigating there "unduly" and the exercise of personal jurisdiction unreasonable, especially when Defendants engaged in business activity in California from which they derived a substantial economic benefit. *See Burger King Corp.*, 471 U.S. at 474 ("[B]ecause modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.") (internal quotation marks omitted); *Huntair*, 774 F. Supp. 2d at 1042 ("Moser presents no evidence of any significant burden, and the allegations, if true, indicate that Moser purposefully availed himself of doing business in California and should be subject to 'the burdens of litigation' here.").

Defendants misconstrue the third factor, "the extent of the conflict with the sovereignty of the defendant's state" to mean that a Texas resident has an interest in not litigating in California. *See* Motion to Dismiss at 12. But as courts have explained, this factor refers to the extent of conflict, if any, between the exercise of jurisdiction in the forum and the sovereignty of the defendant's state, *see Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), and Defendants have identified no such conflict.

Regarding the fourth factor, "the forum state's interest in adjudicating the dispute," Defendants concede that a state "has a strong interest in protecting its residents from injury and in furnishing a forum where injuries may be remedied." *See* Motion to Dismiss at 12 (quoting *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1193 (9th Cir. 2002)). But

15

Defendants then go on to assert that California must have no interest in the dispute because Trustee Matthew Pliskin is a resident of Florida. *See id.*. Not only was Ironclad a California corporation during the time period alleged in the Complaint, but at the time of its dissolution, at least 37% of the total shares of the company were held by California residents, who suffered a correspondingly large portion of the injury resulting from Defendants' conduct. Ironclad filed for bankruptcy in California and the Trust is governed by the laws of California. Thus, the interest of California in adjudicating this dispute is strong and argues in favor of the reasonableness of jurisdiction.

Regarding the fifth factor, "the most efficient judicial resolution of the controversy," Defendants claim that "the three Ironclad executives and all of Defendants and their employees reside in Texas." Motion to Dismiss at 13. However, Defendant Goldstein asserts in his sworn Declaration "that the former Ironclad employees with whom I dealt, including Aisenberg and Cordes, now reside in Texas, Florida, and Michigan." Goldstein Decl. at 4. Accordingly, there are no efficiencies to be gained by litigating this dispute in Texas, especially when the key nonparty witnesses and evidence at AMS are located in California. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) (explaining that "[t]he evidence and witnesses for this litigation are split between California and several other locations" and concluding "[t]his factor therefore favors exercise of jurisdiction in California").

For the same reasons, the sixth factor, "importance of the forum to the plaintiff's interest in convenient and effective relief" argues in favor of the reasonableness of jurisdiction.

Finally, regarding the seventh factor, "the existence of an alternative forum," Defendants claim that simply because Texas is available as an alternative forum, it is unreasonable to litigate this dispute in California. Motion to Dismiss at 13. However, the Ninth Circuit has made it clear that "[w]hether another reasonable forum exists becomes an issue *only when* the forum state is shown to be unreasonable." *CollegeSource*, 653 F.3d at 1080.

OPPOSITION TO MOTION TO DISMISS

Based on these factors, Defendants have not and cannot carry their burden to present a "compelling case" that the exercise of jurisdiction would be unreasonable.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

Respectfully submitted,

Dated: January 24, 2019

DENTONS US LLP
By: /s/ Ahmed ("Andy") R. Jinnah
Samuel R. Maizel
Tania M. Moyron
Ahmed ("Andy") R. Jinnah

SOLOMON & CRAMER LLP
By: /s/ Andrew T. Solomon
Andrew T. Solomon (*admitted pro hac vice*)

Attorneys for Plaintiff Matthew Pliskin, as Trustee for the ICPW Nevada Trust

# PROOF OF SERVICE

I, Chris O'Meara, declare:

I am a citizen of the United States and employed in County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017-5704.

I hereby certify that on January 24, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the following parties:

- **Prashanth Chennakesavan**
  prashanth.chennakesavan@ltlattorneys.com,docket@ltlattorneys.com
- **Ahmed Jinnah**
  andy.jinnah@dentons.com,tania.moyron@dentons.com,asolomon@solomoncramer.com,docket.general.lit.LOS@dentons.com,christina.omeara@dentons.com
- **Samuel R Maizel**
  samuel.maizel@dentons.com,alicia.aguilar@dentons.com
- **Tania M Moyron**
  tania.moyron@dentons.com,chris.omeara@dentons.com
- **Andrew T Solomon**
  asolomon@solomoncramer.com
- **Joedat H Tuffaha**
  joe.tuffaha@ltlattorneys.com,joe.tuffaha@gmail.com,Docket@ltlattorneys.com

I declare that I have been retained by a member of the bar of this Court at whose direction this service was made.

Executed on January 24, 2019, at Los Angeles, California.

/s/Chris O'Meara
Chris O'Meara

109766963\V-1