SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
AHMED ("ANDY") R. JINNAH (Bar No. 297907)
andy.jinnah@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California. 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9224

ANDREW T. SOLOMON (*admitted pro hac vice*)
asolomon@solomoncramer.com
NATHAN B. ROBERTS (*admitted pro hac vice*)
nroberts@solomoncramer.com
SOLOMON & CRAMER LLP
1441 Broadway, Suite 6026
New York, New York 10018
Telephone: (212) 884-9102
Facsimile: (516) 368-3896

Attorneys for Plaintiff Matthew Pliskin,
as Trustee of the ICPW Nevada Trust

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)

| | |
|---|---|
| MATTHEW PLISKIN, AS TRUSTEE OF THE ICPW NEVADA TRUST<br><br>Plaintiff,<br><br>-against-<br><br>ROBERT GOLDSTEIN and DRG STRATEGIC, LLC d/b/a/ MERIDIAN GLOBAL,<br><br>Defendants. | Case. No.: 2:18-cv-09491-FMO(ASx)<br><br>**JOINT RULE 26(f) REPORT**<br><br>Scheduling Conference: February 28, 2019 at 10 a.m. |

Plaintiff Matthew Pliskin, as Trustee of the ICPW Nevada Trust, and Defendants Robert Goldstein and DRG Strategic, LLC submit their Joint Rule 26(f) Report pursuant to F.R.C.P. 26(f),

1

L.R. 26-1, and this Court's Order Setting Scheduling Conference, dated January 18, 2019, ECF No. 18.

## A. STATEMENT OF THE CASE

**Plaintiff's Statement of the Case**

This is an action arising out of the collapse of the public company formerly known as Ironclad Performance Wear Corporation, a Nevada corporation, and its wholly owned subsidiary, Ironclad Performance Wear Corporation, a California corporation (collectively, "Ironclad"). Ironclad was a work apparel company specializing in glove technology for plumbers, masonry workers, demolition workers, electricians, and construction workers.

Defendant Robert Goldstein, acting through his company, Defendant DRG Strategic, LLC d/b/a Meridian Global (collectively, "Defendants"), assisted three senior Ironclad officers to breach their fiduciary duties to the company through a scheme to manipulate Ironclad's financial results by acting as the counterparty in several phony round-trip transactions. These sham transactions served no purpose other than to allow the Ironclad officers to falsely boost Ironclad's reported revenues at critical end-of-fiscal-period moments.

On at least three separate occasions beginning in December 2015, the Ironclad officers "sold" goods to Defendants in the final days of a fiscal reporting period. Then, in the succeeding months, Ironclad "purchased" the same goods back from Defendants at a higher price. The purpose of these sham round-trip transactions was to enable the Ironclad officers to improperly recognize the revenue from the sale in one period and then to improperly record the buyback of the same goods (slightly modified with a new label or packaging) as new inventory, without recording a return and without reversing the prior sale or taking a corresponding loss. Defendants received a share of the higher buyback price as their payment for facilitating the Ironclad officers' scheme to manipulate the company's financial results.

After the Ironclad officers' scheme was discovered in mid-2017, Ironclad was obligated to disavow its publicly reported financial statements, which triggered an automatic default under its loan covenants. The Ironclad officers' scheme was a substantial factor in ultimately forcing Ironclad into bankruptcy. *See In re. ICPW Liquidation Corporation, a California Corporation*, No.

1:17-bk-12408-MB (Bankr. C.D. Cal. filed Sept. 8, 2017). Ironclad's collapse resulted in shareholder damage in excess of $10 million.

Plaintiff has asserted claims against Defendants for 1) aiding and abetting the Ironclad officers' in breaching their fiduciary duties to Ironclad; and 2) unjust enrichment from their active participation in the Ironclad officers' scheme.

**Defendants' Statement of the Case**

Prior to 2015, Defendants had done business with employees of Ironclad while they were at Ironclad and while they were with other companies. In 2015, Ironclad contacted Goldstein in connection with certain gloves Ironclad owned that were in Canada. Ironclad informed Goldstein that due to litigation in Canada, Ironclad was restricted from selling the gloves with the current labels and that Ironclad was itself restricted from relabeling the gloves. Ironclad asked Goldstein to purchase the gloves and have them relabeled and to attempt to sell them in offshore markets. The parties agreed that DRG would purchase the gloves, have them relabeled and then DRG could attempt to sell them into offshore markets. If DRG was unable to sell any or all of the relabeled gloves into offshore markets, Ironclad would purchase the relabeled gloves from DRG at an agreed upon price. Goldstein contacted several of the overseas factories and persons with whom DRG had done business in the past and none expressed a real interest and expressed various concerns. When DRG could not find an entity to relabel the gloves, Ironclad gave him the name of a person at a relabeling company, AMS. Goldstein contacted AMS and AMS agreed to accept the gloves, relabel them and then ship them to a location or locations that would be provided to AMS after relabeling was completed. After arranging to have and having the gloves shipped to AMS and relabeled, DRG tried but was unsuccessful in selling the gloves to offshore markets. DRG paid AMS for relabeling of the gloves. Pursuant to the parties' agreement Ironclad purchased the relabeled gloves from DRG. Ironclad contacted DRG on two other occasions in connection with this same agreement. Each time the gloves were relabeled and DRG was unable to sell any of the gloves into offshore markets and sold them to Ironclad. Upon information and belief, after DRG sold the relabeled gloves to Ironclad, Ironclad was successful in selling the relabeled gloves.

Neither Defendant was ever aware of any accounting issues or other financial dealings of Ironclad or of any employees of Ironclad. At no time did anyone from Ironclad tell either Defendant they were entering into the transactions concerning the gloves in order to change, alter or otherwise affect any promises that were made, sales forecasts, inventory values, revenues or growth numbers. At no time did anyone from Ironclad tell either Defendant about any representations Ironclad management or anyone else made to the Ironclad's Board of Directors, including about Ironclad's projected sales, revenue growth, inventory values, or any other financial information about Ironclad.

Plaintiff asserts claims with absolutely no evidence to support same. One of the essential elements of a claim for aiding and abetting a breach of fiduciary duty is the third party was aware of and knowingly participated in the breach of that fiduciary relationship. Plaintiff has offered and there exists no evidence that either DRG or Goldstein was aware that either was participating in an alleged breach of a fiduciary relationship. This is especially true as both DRG and Goldstein were informed after the first transaction that Ironclad successfully sold the relabeled gloves and were subsequently informed Ironclad sold all of the gloves that were the subject of the two subsequent transactions. Neither DRG nor Goldstein were aware at any time of Ironclad's financial reporting periods, Ironclad's stated or forecasted sales, Ironclad's stated or forecasted inventory values, what Ironclad executives told the Ironclad Board, what Ironclad had stated in any of its financial reports, or any other financial information about Ironclad.

**B.   SUBJECT MATTER JURISDICTION**

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**C.   LEGAL ISSUES**

The parties anticipate key legal issues in this case will include the mental state required to establish a claim for aiding and abetting a breach of fiduciary duty, and the evidence sufficient to establish same.

### D. PARTIES AND EVIDENCE

Plaintiff Matthew Pliskin is the Trustee of the ICPW Nevada Trust (the "Trust"), which is the successor in interest to Ironclad and exists for the benefit of the former shareholders of Ironclad. The Trust was created pursuant to an approved liquidation plan in the bankruptcy proceeding. As Trustee, Mr. Pliskin is directed and authorized to investigate and bring claims on behalf of the Trust. Mr. Pliskin is a citizen of the state of Florida.

Plaintiff anticipates that his main witnesses will include 1) employees of Advantage Media Services ("AMS"), Ironclad's warehouse and logistics vendor, located in California; 2) Defendant Robert Goldstein; 3) Jeffrey Cordes, former Ironclad CEO, now living in Michigan; 4) William Aisenberg, former Ironclad CFO, now living in Texas; and 5) Thomas Felton, former Ironclad SVP–Supply Chain, now living in Texas.

Plaintiff anticipates that his key documentary evidence will consist of documents concerning the three round-trip transactions between Ironclad and Defendants identified in the Complaint, ECF No. 1, at ¶¶ 15-24, including documents reflecting the transactions themselves as well as communications concerning those transactions.

Defendant DRG Strategic, LLC, d/b/a Meridian Global, is a Texas limited liability company. DRG Strategic, LLC has two members, Defendant Robert Goldstein and Deborah Goldstein, both citizens of the state of Texas.

Defendants anticipate their main witnesses will include 1) Jeffrey Cordes, former Ironclad CEO, who Defendants believe lives in Michigan; 2) William Aisenberg, former Ironclad CFO, who Defendants believe lives in Texas; and 3) Thomas Felton, former Ironclad SVP–Supply Chain, who Defendants believe lives in Texas.

Defendants anticipate the key documentary evidence will consist of documents concerning the three transactions between Ironclad and Defendants identified in the Complaint, ECF No. 1, at ¶¶ 15-24, including documents reflecting the transactions themselves as well as communications concerning those transactions.

### E. INSURANCE

None.

**F.     MAGISTRATE JUDGE**

The parties do not consent to a mutually agreeable magistrate judge from the Court's Voluntary Consent list to preside over this action for all purposes, including trial.

**G.     DISCOVERY**

The parties propose the following discovery schedule:

| Event | Date |
|---|---|
| Initial Disclosures | Within 21 days of an Order from this Court resolving Defendants' Motion to Dismiss and the Court's February 11, 2019 Order regarding briefing on the question of transfer pursuant to 28 U.S.C. § 1404(a) |
| Requests for Documents | July 30, 2019 |
| Interrogatories | July 30, 2019 |
| Requests for Admission | July 30, 2019 |
| All Fact Discovery | August 30, 2019 |
| Expert Disclosures | September 20, 2019 |
| Rebuttal Expert Disclosures | October 17, 2019 |
| All Expert Discovery | December 19, 2019 |

**H.     MOTIONS**

Currently pending before the Court is Defendants' Motion to Dismiss, ECF No. 15.  The parties also intend to submit briefing on the question of transfer under 28 U.S.C. § 1404(a) in accordance with the Court's February 11, 2019 Order, ECF. No. 28.

At the present time, Plaintiff does not anticipate making any motions seeking to add other parties or claims, or file amended pleadings.

Defendants anticipate the possibility of making a motion for judgment on the pleadings under F.R.C.P. 12(c)

**I.     CLASS CERTIFICATION**

Not applicable.

**J.     DISPOSITIVE MOTIONS**

Defendants contemplate filing a motion for summary judgment under F.R.C.P. 56 to resolve all claims against them.

The parties propose that any dispositive motions shall be filed with the Court on or before January 9, 2020, with a motion hearing date of February 6, 2020.

**K.     SETTLEMENT / ALTERNATIVE DISPUTE RESOLUTION**

The parties have engaged in settlement discussions, including multiple discussions by telephone concerning the terms of a potential settlement.  While the parties are optimistic that they may be able to reach a mutually agreeable resolution of this matter, it remains uncertain whether this will happen.

The parties agree, pursuant to L.R. 16-15.4, to appear before the district judge or magistrate judge assigned to the case for such settlement proceedings as the judge may conduct or direct.

**L.     PRETRIAL CONFERENCE AND TRIAL**

The parties propose the following dates for the pretrial conference and trial:

| Event | Date |
| --- | --- |
| Pretrial filings under L.R. 16-4, 16-5 & 16-6 | February 20, 2020 |
| Final pretrial conference order under L.R. 16-7 | February 28, 2020 |
| Pretrial conference | March 12, 2020 |
| Trial | April 13, 2020 |

**M.     TRIAL ESTIMATE**

The parties estimate that the trial will require 5 days.  The matter will be tried before a jury. Plaintiff estimates calling 7 witnesses for his case-in-chief.  Defendants estimate calling 4 witnesses in their defense.

JOINT RULE 26(f) REPORT

**N.     TRIAL COUNSEL**

Andrew T. Solomon, of Solomon & Cramer LLP, will serve as trial counsel for Plaintiff.

Bernie E. Hauder, of Adkerson Hauder & Bezney, P.C., will serve as trial counsel for Defendants.

The parties reserve the right to designate additional trial counsel.

**O.     INDEPENDENT EXPERT OR MASTER**

The parties agree that the appointment of a master, pursuant to F.R.C.P. 53, or an independent scientific expert is not warranted at this time.

**P.     OTHER ISSUES**

None.

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated: February 14, 2019 | DENTONS US LLP<br>By: */s/ Ahmed ("Andy") R. Jinnah*<br>Samuel R. Maizel<br>Tania M. Moyron<br>Ahmed ("Andy") R. Jinnah |
|   | SOLOMON & CRAMER LLP<br>By: */s/ Andrew T. Solomon*<br>Andrew T. Solomon (*admitted pro hac vice*)<br>Nathan B. Roberts (*admitted pro hac vice*)<br><br>Attorneys for Plaintiff Matthew Pliskin, as Trustee for the ICPW Nevada Trust |
| Dated: February 14, 2019 | LTL ATTORNEYS LLP<br>By: */s/ Joe H. Tuffaha*<br>Joe H. Tuffaha<br>Prashanth Chennakesavan<br><br>ADKERSON HAUDER & BEZNEY, P.C.<br><br>By: */s/ Bernie E. Hauder*<br>Bernie E. Hauder (*admitted pro hac vice*)<br><br>Attorneys for Defendants Robert Goldstein and DRG Strategic, LLC |

### Certification Pursuant to Local Rule 5-4.3.4(a)(2)

I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: February 14, 2019          By: */s/ Nathan B. Roberts*
                                        Nathan B. Roberts